in the invoice; and when we find in the acts of 1823 and 1830 the same language employed as in the act of 1832, and as in the two former there can be no pretence for the construction that a want of correspondence between the package and invoice works a forfeiture, so the latter ought not to receive a different construction. These laws being in pari materia, may be taken together for the purpose of discovering the true interpretation. In none of them is this want of correspondence made a distinct and substantive ground of forfeiture; but only imposes upon the collector the duty of further examination, and the forfeiture depends upon other discoveries. The consequence of finding in the package articles not described in the invoice was different, under the acts of 1823 and 1830, from that provided by the act of 1832. In the two former, such discovery worked a forfeiture of the whole package; in the latter, the article not entered is only forfeited. The judgment of the district court must, accordingly, be reversed.

---

WRIGHT (UNITED STATES v.). See Cases Nos. 16,769–16,778.

WRIGHT (UNITED STATES ex rel. HENDERSON v.). See Case No. 16,777.

WRIGHT (UNITED STATES ex rel. TURNER v.). See Case No. 16,778.

---

## Case No. 18,100.

### WRIGHT v. WATERS.

[2 Cranch, C. C. 342.] [1]

Circuit Court, District of Columbia. Oct. Term, 1822.

#### DISTRESS FOR RENT.

Costs do not accrue, upon levying a distress for rent, unless the goods are sold.

Replevin of goods distrained for rent.

Mr. Dermott for defendant, moved the court to allow the constable's poundage fees for levying the distress, to be taxed as costs in replevin, the defendant having obtained a verdict for the rent arrear.

Mr. Redin, contra, contended that those fees did not accrue in this action, but, if they accrued at all, they accrued before the suit was commenced. But they did not accrue at all, for Act Md. 1779, c. 25, gives them only in case of sale; but here the goods were replevied, and not sold.

THE COURT (THRUSTON, Circuit Justice, absent) said that the poundage fees had not accrued, as no sale had been made.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 18,101.

### WRIGHT v. WELLS.

[Pet. C. C. 220.] [1]

Circuit Court, D. Pennsylvania. April Term, 1816.

#### REMOVAL FROM STATE COURT — JURISDICTIONAL AMOUNT—RELEASE OF PART OF CLAIM.

If a cause be removed from a state court by the defendant, and the plaintiff declares in the circuit court of the United States for more than five hundred dollars, the plaintiff cannot, by a release of part of his debt, so as to reduce it to less than five hundred dollars, take away the jurisdiction of the circuit court.

[Cited in Ladd v. Tudor, Case No. 7,975.]

Rule to show cause why this suit, which had been removed from the state court, should not be remanded, on a suggestion that the sum demanded is less than five hundred dollars. After this suit was entered in the state court, and before a declaration was filed, the defendant filed his petition, praying that the cause might be removed into this court, which was directed accordingly. On an appearance being entered in this court, the plaintiff filed a declaration, and laid his damages at one thousand dollars.

Mr. Rawle showed cause, and relied upon the damages in the declaration, as being sufficient to maintain the jurisdiction of this court. It was answered by Mr. Lewis, for the plaintiff, that the sum really demanded is less than five hundred dollars, as is admitted by the plaintiff on the record.

BY THE COURT. The state court was not bound to grant the petition for removal, unless it was satisfied, that the sum in dispute amounted to five hundred dollars. Having done so, it follows, that that court was so satisfied. In this court the plaintiff has laid his damages at five hundred dollars, which is sufficient for the jurisdiction of this court, and it cannot be ousted by the plaintiff's releasing so much of his demand, as to reduce it below that sum. Rule discharged.

---

WRIGHT (WELLS v.). See Case No. 17,405.

---

## Case No. 18,102.

### WRIGHT v. WEST.

[1 Cranch, C. C. 303.] [2]

Circuit Court, District of Columbia. March Term, 1806.

#### WILL—CHARGE ON LAND—CERTIFICATE OF OFFICER.

1. A devise of lands, "after payment of debts," subjects the land to the payment of the debts.

2. Where a clerk certifies the mayor, it is not necessary that the mayor should certify the clerk.

[Cited in Addison v. Duckett, Case No. 77.]

---

[1] [Reported by Richard Peters, Jr., Esq.]

[2] [Reported by Hon. William Cranch, Chief Judge.]

Bill in equity for the sale of real estate to pay debts. The words of the will were, "I give the whole of what I may be possessed of, at my decease, and after my debts are paid, to Mrs. West." The plaintiff's claim was for a balance due for work and labor.

E. J. Lee, for defendant, demurred to the bill, because it did not state that the plaintiff could not establish his debt at law, nor that he could not prove the amount of assets at law. If the will makes the real estate assets, the executrix is bound to return them in the inventory.

Demurrer overruled.

The defendant then offered an answer, sworn before an alderman of Richmond, who was ex officio a justice of the peace. Rev. Code, 72. The alderman was certified by the mayor of Richmond, who was certified by the clerk of the court of hustings.

Mr. Taylor, for plaintiff, objected to the answer, because the mayor had not certified the clerk of the court of hustings.

But THE COURT overruled the objection, upon consideration of the case of Potts v. Ghequiere, in this court in March, 1805 [Case No. 11,346].

---

WRIGHT (WILKINS v.). See Case No. 17,-666.

WRIGHT, The CAPT. GEO. W. See Case No. 2,393.

WRIGHT, The FRANCIS. See Case No. 5,044.

WRIGHT, The GEORGE S. See Case No. 5,340.

WRIGHT, The JAMES A. See Cases Nos. 7,190 and 7,191.

WRIGHT, The M. W. See Case No. 9,983.

---

## Case No. 18,103.

### In re WRISLEY et al.

[17 N. B. R. 259.] [1]

District Court, S. D. New York. Feb. 22, 1877.

BANKRUPTCY—LEVY OF EXECUTION—PROCEEDS OF MORTGAGE SALE.

The bankrupts having made default in the payment of a chattel mortgage, the mortgagees, pursuant to the terms thereof, took possession of the mortgaged property. Before the sale a creditor issued execution to the sheriff. One hour thereafter the petition was filed. There was a surplus on the sale of the property. *Held*, that at the time the execution was issued the bankrupts had no leviable interest in the property, and that the creditor had no lien on the surplus to the exclusion of the assignee.

Claim of Beinicke & Co. to the surplus arising on the sale of certain mortgaged property of the bankrupts [Frank Wrisley and John L. Wrisley], on the ground that

---

[1] [Reprinted by permission.]

they held a lien thereon by virtue of an execution issued prior to the filing of the petition.

W. S. Palmer, for assignee in bankruptcy.

C. Goeller, for Beinecke & Co.

BLATCHFORD, District Judge. The chattel mortgage executed by the bankrupts to Field and others, August 31, 1875, grants, bargains, and sells to the mortgagees all the household furniture, etc., then on the premises and mentioned in the schedule, to have and to hold the same to the mortgagees forever, on condition that if the payments of money specified shall be made as they shall become due, and if the covenants of the lease shall be kept, the mortgage shall be void. The instrument further provides, that until default be made, the mortgaged property shall 'remain where it is, and that, if default be made in the payment of rent, or in the performance of the conditions of the lease by the lessee, the mortgagees may take possession of the mortgaged property and sell it at public auction and receive the proceeds, and apply them, first to the expenses of sale, and next to paying claims arising under the lease, and the surplus to go to the mortgagors.

It is shown that prior to the issuing to the sheriff of the execution on the judgment of Beinicke & Co., there had been default in the payment of the rent on the lease, and the mortgagees had lawfully, and in accordance with the terms of the mortgage, taken possession of the mortgaged property. Under the law of New York, no leviable interest in the property remained in the mortgagors at the time the execution was issued. Hall v. Sampson, 35 N. Y. 274. The legal title, the right of possession, and possession in fact, were then out of the mortgagors and in the mortgagees. The petition in bankruptcy was filed one hour after the execution was issued, and its operation was such that the right of the assignee in bankruptcy subsequently appointed attached to the property, in priority to any right of Beinecke & Co. Nor, although there was a surplus of the proceeds of the mortgaged property, which would have returned to the mortgagors, if there had been no bankruptcy, can the issuing of the execution operate as a lien on such surplus in exclusion of the right which the general creditors, represented by the assignee in bankruptcy, have to it.

I do not think it is satisfactorily established by the evidence, that there was any property levied on, or capable of being levied on, or attempted to be levied on, or in possession of the mortgagees, when the execution was issued, that was not covered by the mortgage, or that any property not covered by the mortgage was sold by the mortgagees. It results that the claim of Beinicke & Co. must be wholly rejected, with costs of the proceedings, to be paid by them.